# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Honeywell International Inc.,                    File No. 11-cv-569 (JNE/TNL)

       Plaintiff/Counter Defendant,

v.                                               **ORDER OPINION**

ICM Controls  Corp.,

       Defendant/Counter Claimant.

---

Larina A. Alton, Martin R. Lueck, Matthew L. Woods, and Peter N. Surdo, Robins Kaplan Miller & Ciresi LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402-2015 (for Plaintiff/Counter Defendant); and

Allen W. Hinderaker, Rachel K. Zimmerman, Tong Wu, Heather J. Kliebenstein, and Katherine E. Muller, Merchant & Gould PC, 80 South Eighth Street, Suite 3200, Minneapolis, MN  55402 (for Defendant/Counter Claimant).

---

      This matter is before the Court, United States Magistrate Judge Tony N. Leung, on three motions: Plaintiff/Counter Defendant Honeywell International Inc.'s ("Honeywell") Motion to Amend Response to ICM's Request for Admissions Nos. 16, 17 & 40 (Docket No. 142); Defendant/Counter Claimant ICM Controls Corp.'s ("ICM") Motion for a Protective Order Relating to Honeywell International Inc.'s Rule 30(b)(6) Deposition Notice of ICM Controls Corp. (Docket No. 159); and Honeywell's Motion to Amend its Complaint (Docket No. 161).

# I.

As stated in this Court's prior order, "this is a dispute over the manufacture, advertisement, and sale of combustion control products (oil primaries and ignition modules) for appliances and thermostats." (Order Op. at 1, Sept. 24, 2013, Docket No. 187 ("September 24 Order").) Essentially, Honeywell alleges that ICM is selling "knockoffs" of Honeywell products. (*See id.* at 2.) Honeywell has alleged a number of claims against ICM, including patent infringement. (*Id.* at 1-3.)

# II.

Honeywell first moves to amend its response to ICM's Request for Admissions ("RFA") 16, 17, and 40.[1]

## A. RFA 16 and 17

RFA 16 and 17 each seek information about where a specified product is assembled. (Honeywell's Mem. in Supp. of Mot. to Amend RFA at 3-5, Docket No. 144.) Honeywell initially admitted that the products specified in the RFA were assembled in Mexico. (*Id.* at 4-5.) Honeywell later learned that the products were, in fact, assembled in Golden Valley, Minnesota. (*Id.* at 6, 7.) Honeywell seeks to amend its response to RFA 16 and 17 in order to "reflect the record." (*Id.* at 8.)

Subsequent to the filing of this motion, the parties were able to reach an agreement in which ICM "does not oppose [Honeywell's] amendment of its responses to [RFA] 16

---

[1] Honeywell's motion was originally scheduled to be heard on Monday, April 22, 2013. The parties appeared before the undersigned for a settlement conference on the preceding Friday, April 19, 2013. (Sept. 24 Ord. at 7.) Given the progress of the parties' discussions at the time, the parties requested that the April 22 hearing be cancelled in a letter to the Court. This matter has been fully briefed and the Court has determined that this matter can be determined on the papers. *See* D. Minn. LR 7.1(b) ("If the court cancels the hearing—whether at the parties' joint request or on its own—the parties must nonetheless file and serve their motion papers by the deadlines that would have applied if the hearing had not been cancelled.").

and 17." (Joint Stip. re RFA 16 & 17 at 1, Docket No. 151.) Based on the parties' agreement, Honeywell's motion is denied as moot with respect to RFA 16 and 17.

**B. RFA 40**

RFA 40 concerns a group of products ICM has redesigned since this action started. These products are now cast in blue plastic and have different labels. (Honeywell's Mem. in Supp. of Mot. to Amend RFA at 2, 3; *see also* ICM's Mem. in Opp'n to Mot. to Amend RFA at 5, Docket No. 149; First Am. Answer, Affirmative Defenses & Countcls. ¶ 248, Docket No. 34 ("First Am. Answer").) In its First Amended Answer, Affirmative Defenses and Counterclaims, ICM attached images of the redesigned products and counterclaimed for a judicial declaration that the redesigned products "do not infringe trademark rights of Honeywell, are not false advertising, and do not violate the Minnesota Deceptive Trade Practices Act." (First Am. Answer ¶¶ 250, 251.)

In RFA 40, ICM requested that Honeywell admit the following: "The trade dress for [the redesigned] products depicted in Exhibits 6 through 8, inclusive to ICM Control[s] Corp.'s First Amended Answer, Affirmative Defenses and Counterclaims do not infringe any trade dress rights of Honeywell." (Decl. of Peter N. Surdo in Supp. of Honeywell's Mot. to Amend RFA ("Surdo Decl."), Ex. A, Docket No. 145-1.) In addition to asserting general objections, Honeywell:

> specifically object[ed] that [RFA 40] is not relevant to the claims or defenses in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Honeywell further object[ed] that this Request calls for a legal conclusion and is therefore not subject to admission or denial.

Subject to and without waiving the foregoing general and specific objections, Honeywell admit[ted] only that it does not assert a claim that the trade dress for the redesigned versions of the ICM1501, ICM1502, ICM 1503, ICM283, and ICM290A products depicted in Exhibits 6 through 8, inclusive, to ICM's First Amended Answer, Affirmative Defense and Counterclaims infringe any trade dress rights of Honeywell.

(*Id.*, Ex. B, Docket No. 145-2.)

### 1. The Dispute

ICM moved for partial default judgment and partial dismissal of Honeywell's Amended Complaint, seeking to "prevent Honeywell only from asserting infringement by ICM Controls' redesigned products, labels, and manuals." (ICM's Mem. in Supp. of Mot. for Partial Default J. and Partial Dismissal at 1, Docket No. 119.) Among other things, ICM cited Honeywell's response to RFA 40 as demonstrating that Honeywell's claims were limited to the products originally accused and did not include the redesigned products. (*Id.* at 3-4, 9, 11, 13.)

Honeywell now seeks to amend its response to RFA 40 because ICM has "taken the position" that Honeywell's response "justifies the dismissal of Honeywell's claims." (Honeywell's Mem. in Supp. of Mot. to Amend RFA at 1.) According to Honeywell:

Honeywell responded to RFA 40 early in discovery, objecting to [RFA] 40 and providing a qualified response that ICM found to be unclear. ICM wrote to Honeywell asking for explanation of Honeywell's qualified response because ICM did not understand Honeywell's meaning and Honeywell responded that RFA 40 *was indeed denied.* ICM never objected or otherwise responded. Honeywell then served revised responses to ICM's [RFAs] *confirming its denial* of RFA 40. ICM again did not object. Despite ICM's apparent acceptance of Honeywell's response, ICM has recently and

4

> for the first time taken . . . the position that (1) Honeywell's clarifications (by way of correspondence and amended responses) are not effective without leave of Court, (2) despite Honeywell's clarifications and ICM's failure to object to them, RFA 40 *was actually admitted*, and (3) therefore Honeywell's claims should be dismissed.

(*Id.*) Honeywell asserts that it has always held the position that "ICM's 'blue' products continue to infringe upon Honeywell's trade dress" and permitting the amendment will promote resolution of this action on the merits. (*Id.* at 16.) In addition, Honeywell contends that (1) because ICM never challenged Honeywell's objections to RFA 40, those objections should stand, and (2) RFA 40 seeks an improper legal conclusion and should be stricken in its entirety. (*See id.* at 10-14.)

ICM responds that Honeywell is attempting to "sweep in through the back door claims that were excluded from its Amended Complaint, given up by its default on ICM Controls' counterclaims, and expressly disavowed in its original responses to ICM Controls' requests for admission." (ICM's Mem. in Opp'n to Mot. to Amend RFA at 1.) ICM argues that "[i]t is simply too late for Honeywell to ask this Court to give it a do-over." (*Id.* at 3.)

**2. Analysis**

Under Rule 36, "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ." Fed. R. Civ. P. 36(a)(1)(A). Rule 36 further provides:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be

> withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Fed. R. Civ. P. 36(b).

"The two-prong test of Rule 36(b) directs the court to consider the effect upon the litigation and prejudice to the resisting party, rather than focusing on the moving party's excuses for an erroneous admission." *Fed. Deposit Ins. Corp. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (quotation and citation omitted). "Thus, Rule 36(b) 'emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.'" *Edeh v. Equifax Info. Servs.*, LLC, No. 11-cv-2671 (SRN/JSM), ___ F.R.D. ____, 2013 WL 4829189, at *4 (D. Minn. Sept. 10, 2013) (quoting Fed. R. Civ. P. 36(b) advisory committee's note (1970)). Whether a party may amend its admissions lies within the discretion of the Court. *Prusia*, 18 F.3d at 640; *see also Quasis v. Schwan Food Co.*, 596 F.3d 947, 952 (8th Cir. 2010) ("The parameters for permitting withdrawal of admissions under 36(b) are designed to guide the district court's discretion in evaluating a motion to withdraw.").

### a. Presentation of the Merits

The Court first looks to whether allowing the amendment would aid in the presentation of the merits of this case. Fed. R. Civ. P. 36(b); *Prusia*, 18 F.3d at 640. Honeywell argues that permitting it to amend its response to RFA 40 aids in presentation of the merits because Honeywell has maintained throughout this litigation that the

redesigned products also infringe and, given that "[t]he original and redesigned products share all design elements except color and some aspects of their labels, rendering any relief to Honeywell on the original claims [is] potentially of no effect even if granted." (Honeywell's Mem. in Supp. of Mot. to Amend RFA at 16-17.) ICM counters that Honeywell's response to RFA 40 "has no bearing on the merits of the claims Honeywell has made in this action" because, "[b]y its own decision, Honeywell limited the claims asserted in its Amended Complaint to claims against the ICM Controls products as of the time of the original Complaint." (ICM's Mem. in Opp'n to Mot. to Amend RFA at 23-24.)

Where an erroneous admission effectively bars a party's claim, permitting the amendment facilitates the presentation of the case on the merits. *Prusia*, 18 F.3d at 640; *see also Edeh*, 2013 WL 4829189, at *5 ("When a material fact is clearly contested, considering that fact to be admitted precludes, rather than promotes, presentation of the case on the merits."). There is no dispute that this litigation prompted the redesign of ICM's 1500 series and 283 and 290 products. The parties' arguments over whether the redesigned products are subsumed in Honeywell's Amended Complaint—a matter presently not before this Court—illustrate RFA 40's ability to affect presentation of the merits of this action. Accordingly, this factor weighs in favor of allowing Honeywell to amend its response to RFA 40.

### b. Prejudice to ICM

"The second prong of the Rule 36(b) test concerns the difficulty the nonmoving party may face if withdrawal of the admissions is allowed, based on that party's need to

obtain evidence to prove a matter that had previously been admitted." *Edeh*, 2013 WL 4829189, at *5; *see also Prusia*, 18 F.3d at 640 ("The prejudice contemplated by Rule 36(b) relates to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted." (quotation omitted)). "The party who obtained the admissions has the burden of demonstrating prejudice . . . ." *Edeh*, 2013 WL 482189, at *5; *see also Prusia*, 18 F.3d at 640. "The necessity of having to convince the trier of fact of the truth of a matter erroneously admitted is not sufficient. Likewise, preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." *Prusia*, 18 F.3d at 640 (citation omitted).

ICM argues that it "would be severely prejudiced by the allowance of a new claim at this stage because [it] has justifiably relied on Honeywell's admission in crafting its litigation strategy." (ICM's Mem. in Opp'n to Mot. to Amend RFA at 26-27.) Honeywell counters that, based on actions which occurred subsequent to its response to RFA 40, "ICM has known of Honeywell's intent to pursue its claim for trade dress infringement related to the 'blue' ICM products throughout the course of this litigation, and has participated as though the blue products remained part of the case." (Honeywell's Mem. in Supp. of Mot. to Amend RFA at 19.)

Some additional background is useful in considering the prejudice prong of Rule 36(b). ICM served its first request for admissions, including RFA 40, in April 2012. (Surdo Decl., Ex. A.) Honeywell responded in May. (*Id.*, Ex. B.) Approximately one month later, ICM sought clarification concerning several RFAs, including RFA 40,

specifically:  "Several of Honeywell's responses to ICM Controls's admissions are not fully responsive.  With regard to [RFA] 31-40, Honeywell made limited admissions but did not answer the remainder of the requests.  Please confirm whether Honeywell admits or denies these requests."  (*Id.*, Ex. C., Docket No. 145-3.)  Honeywell responded in July, stating:

> RFA No. 40 requests admission that the trade dress for certain ICM products depicted in Exhibits 6-8 to ICM's First Amended Answer do not infringe any trade dress rights of Honeywell.  *Honeywell denies this request.*  These exhibits demonstrate that ICM has done virtually nothing to distinguish the overall look and feel of its knock-off products other than change the color of the plastic housing and implement the newly redesigned labels. . . .

(*Id.*, Ex. D (emphasis added), Docket No. 145-4.)  Five months later, Honeywell attempted to change its response to RFA 40 by simply serving amended responses.  (*Id.*, Ex. G, Docket No. 145-7.)  *Compare* Fed. R. Civ. P. 36(b) (stating a matter admitted "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended"), *with* Fed. R. Civ. P. 26(e)(1)(A) (describing a party's duty to supplement or correct a discovery response, including a request for admission, should it learn the "response is incomplete or incorrect, and if the additional or corrective information has not otherwise been make known to the other parties during the discovery process or in writing").

Given this series of events, the Court cannot help but view ICM's assertion of prejudice with a degree of skepticism.  ICM had all of the above information during the discovery process.  This case has been hotly and persistently litigated.  It is true that,

when Honeywell moved to amend its response to RFA 40, this matter was already two years old and discovery was coming to a close. But, given the events that took place between Honeywell's response to RFA 40 and this motion, ICM has not persuaded this Court that it would be prejudiced in defending itself and maintaining its own claims against Honeywell if Honeywell's motion were granted. The analysis, however, does not end here.

### c. Court's Discretion

When amendment of an admission would promote the presentation of the merits and there is no prejudice to the party who obtained the admission, "the court *may* permit withdrawal or amendment." Fed. R. Civ. P. 36(b) (emphasis added). Thus, it still remains within the Court's discretion to permit or deny a request to amend or withdraw an admission even if the two-prong test set forth in Rule 36(b) is satisfied. *Conlon v. United States*, 474 F.3d 616, 625 (9th Cir. 2007) ("The text of Rule 36(b) is permissive."); *Edeh*, 2013 WL 4829189, at *7 ("Rule 36(b) provides that a court 'may' permit withdrawal of admissions if the two-prong test is met. Thus, the Rule is permissive.").

Here, just one month after having served its response to RFA 40, Honeywell received communication from opposing counsel requesting clarification of its response. Honeywell responded by arguably reversing its prior response; yet, Honeywell did nothing to amend formally its response in accordance with Rule 36 until nearly nine months later. Further, Honeywell itself concedes that it "noticed that Honeywell's *qualified admission* to [RFA] 40 . . . should be revised" in December. (Honeywell's

10

Mem. in Supp. of Mot. to Amend RFA at 8 (emphasis added).) But despite this recognition and the language of Rule 36 that "[a] matter admitted under this rule is conclusively established *unless the court, on motion, permits the admission to be withdrawn or amended*," Fed. R. Civ. P. 36(b) (emphasis added), Honeywell just served amended responses and did not formally move to amend for another four months. Honeywell had multiple opportunities to utilize the process outlined in Rule 36; but, Honeywell did not do so until after ICM moved for partial default judgment and partial dismissal of Honeywell's Amended Complaint, relying in part on Honeywell's response to RFA 40.

Likewise, to the extent that Honeywell now seeks to have RFA 40 declared improper, "this argument is more properly raised in a motion before submitting responses to the request," *Edeh*, 2013 WL 4829189, at *6 n.3, or in opposition to a motion brought by the requesting party to determine the sufficiency of an answer or objection, *see* Fed. R. Civ. P. 36(a)(6); *Edeh*, 2013 WL 4829189, at *6 n.3.

In the future, Honeywell may be able to argue that RFA 40 should be viewed in the context of the parties' discussions at the time. (Honeywell's Mem. in Supp. of Mot. to Amend RFA at 6.) *See Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1210 (8th Cir. 1995) ("Issues change as a case develops, and the relevance of discovery responses is related to their context in the litigation."). But the parties' discovery responses are what they are and each party, aided by experienced counsel, has litigated accordingly. Permitting Honeywell to amend its response to RFA 40 at this stage in the litigation does not serve the interests of justice. Therefore, based on the facts and

circumstances of this protracted litigation and in light of the discretion accorded to the Court under Rule 36, the Court will deny Honeywell's motion with respect to RFA 40.

### d. Request for Sanctions

Finally, ICM requests that Honeywell be sanctioned for failing to comply with the meet-and-confer requirement set out in D. Minn. LR 7.1(a) before filing the motion to amend the responses to RFA 16, 17, and 40. (ICM's Mem. in Opp'n to Mot. to Amend RFA at 27-29.) ICM argues that if Honeywell had met and conferred with ICM prior to filing its motion, Honeywell would have learned that ICM did not oppose Honeywell's amendments to RFA 16 and 17. (*Id.* at 8.) ICM requests that the Court award it the attorneys' fees and costs incurred in responding to this motion. (*Id.* at 29.)

Local Rule 7.1(a) states that "the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion" before filing the motion and file a statement attesting to such efforts. If the parties are not able to meet and confer prior to the filing of the motion, "the moving party must promptly meet and confer with the opposing party after filing the motion and must supplement the motion with a meet-and-confer-statement." D. Minn. LR 7.1(a)(1)(A). Additionally, "[a]fter the moving party has filed a meet-and-confer statement, if the moving and opposing parties agree on resolution of all or part of the motion that the statement relates to, the parties must promptly notify the court of their agreement by filing a joint situation." D. Minn. LR 7.1(a)(2).

In its meet-and-confer statement, Honeywell described its efforts to resolve this dispute with ICM as consisting of (1) the letters exchanged in the summer of 2012; (2) its

attempt to serve amended responses in December 2012; (3) an e-mail sent to ICM the day Honeywell filed its motion; and (4) Honeywell's motion papers themselves. (Meet & Confer Stmt. at 1, Docket No. 146.) Approximately two weeks after the motion was filed, the parties filed the joint stipulation stating that they had come to an agreement regarding RFA 16 and 17. (Joint Stip. re RFA 16 and 17 at 1.)

Local Rule 7.1(a) contemplates that the parties will meet and confer prior to engaging in motion practice, but also recognizes that this conversation is not always feasible prior to the filing of the motion. Accordingly, Local Rule 7.1(a) requires the moving party to update the Court when the parties are eventually able to meet and confer regarding their dispute. The record leaves something to be desired concerning details of discussions between the parties. Nevertheless, Honeywell's e-mail and the subsequent stipulation narrowly meet the technical requirements of Local Rule 7.1(a). *See Edeh*, 2013 WL 4829189, at *4 (e-mail to counsel warning motion would be filed on same day motion was filed followed by filing of supplemental meet-and-confer statement "technically complied with the plain language of Local Rule 7.1"). Therefore, the Court will deny ICM's request for sanctions.

**III**.

Honeywell moves for leave to amend its First Amended Complaint to plead willful infringement of Honeywell's patents. ICM opposes the motion, arguing that (1) Honeywell has known the facts underlying its willful-infringement claims for a long time and there is no justification for its delay in seeking leave to amend, and (2) Honeywell's willful-infringement claims are futile. ICM also contends that it would be unduly

13

prejudiced if the Court were to permit Honeywell to add claims at this point in the litigation.

## A. Standard of Review

With the exception of amendments as a matter of course, the Federal Rules of Civil Procedure permit a party to "amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  The Rules further provide that leave shall be freely given "when justice so requires."  *Id.*  "[T]here is no absolute right to amend and a finding of undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment may be grounds to deny a motion to amend."  *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005) (quotation omitted).

Significantly, Honeywell's motion to amend comes more than one year after the deadline for such motions.  (*See* Fifth Am. Pretrial Sch. Order ¶ 9(b), Docket No. 136.) Because Honeywell's motion was filed after the deadline for amended pleadings, Rule 16(b)'s good-cause requirement must also be satisfied.  *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a).").

"The decision whether to grant leave to amend rests in the discretion of the trial court."  *Hanson v. M & I Marshall & Isley Bank*, No. 10-cv-2069 (JRT/JJK), 737 F. Supp. 2d 988, 990 (D. Minn. Sept. 15, 2010); *see also Bell v. Allstate Life Ins. Co.*, 160

F.3d 452, 454  (8th Cir. 1998) (decision of whether to grant leave to a party to amend his complaint is left to the Court's "sound discretion").

**B.  Timing of Motion to Amend**

"[Eighth Circuit] precedent establishes that if a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quotation omitted).  "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Id.* (quotation omitted).  "Where there has been no change in the law, no newly discovered facts, or any other changed circumstances after the scheduling deadline for amended pleadings, then [the court] may conclude that the moving party has failed to show good cause." *Id.* (quotation omitted).

Honeywell argues that ICM "thwarted" Honeywell's efforts to depose Ronald Kadah, the president of ICM, whom Honeywell contends was identified "as the primary decision-maker in the development of ICM's look-alike products" based on ICM's pleadings."  (Honeywell's Mem. in Supp. of Mot. to Amend at 14, Docket No. 163.) Because Honeywell was unable to take Kadah's deposition due to health issues which ultimately took his life earlier this year, (*see* Sept. 24 Order at 3, 8-10), Honeywell asserts that it "was forced to pry the information summarized herein from an assortment of witnesses, delaying the time when the record was developed enough for Honeywell to assess the issue of willfulness."  (Honeywell's Mem. in Supp. of Mot. to Amend at 14.)

ICM responds that "Honeywell has known the so called 'facts' it cites in its attempt to demonstrate the existence of willfulness for a long time."  (ICM's Mem. in

Opp'n to Mot. to Amend at 1, Docket No. 177.) ICM asserts that Honeywell knew about Kadah's condition for more than one year and, after his death this past February, Honeywell "did not move with any haste to file this motion." (*Id.* at 15.) ICM also asserts that "the testimony and documents on which Honeywell purports to now base its claim for willfulness have been known to Honeywell for many months," citing a document produced in August 2012, three depositions taken in September and October 2012, and two depositions taken in January 2013. (*Id.* at 16.)

Honeywell "must have a good faith basis for alleging willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (citing Fed. R. Civ. P. 8, 11). It is true that this litigation was not unaffected by Kadah's untimely death. ICM is a "small and family-owned operation." (ICM's Opp'n to Honeywell's Mot. to Compel Discovery at 3, Docket No. 82.) ICM was founded by Kadah's father and, prior to Kadah's death, was managed by Kadah and his brother and sister. (*Id.*) But, while this tragic event may have altered Honeywell's approach to its willful-infringement claims and prompted Honeywell to use discovery in a way not previously anticipated, ICM is correct that the deposition testimony on which Honeywell substantially relies was in Honeywell's possession for no less than four months and, in some instances, nearly nine months. This Court need not, however, determine whether Kadah's death was a change in circumstances justifying Honeywell's delay in seeking leave to amend because, even if Honeywell could show good cause, Honeywell's willful-infringement claims are futile for the reasons stated below.

## C. Futility

An "[a]mendment is futile where the proposed amended complaint fails to state a claim under the analysis for a Rule 12(b)(6) motion." *Block v. Toyota Motor Corp.*, File Nos. 10-cv-2802 (ADM/AJB), 10-cv-2803 (ADM/AJB), 10-cv-2804 (ADM/AJB), 10-cv-2805 (ADM/AJB), 795 F. Supp. 2d 880, 886 (D. Minn. June 13, 2011). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *U.S. ex rel Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).

"A finding of willful infringement allows an award of enhanced damages under 35 U.S.C. § 284." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012) (citing *Seagate*, 497 F.3d at 1368).

> To prove a cause of action for willful infringement, a patent owner must demonstrate by clear and convincing evidence that the infringer acted despite an "objectively high likelihood that its actions constituted infringement" and that this "objectively defined risk was . . . either known or so obvious that it would have been known to the accused infringer."

*MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 255, 235 (D. Del. 2012) (quoting *Seagate*, 497 F.3d at 1371). "At the pleading stage, a plaintiff alleging a cause of action for willful infringement must plead facts giving rise to at least a showing of objective recklessness of the infringement risk." *Id.* at 236.

"[T]he complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants." *Id.* (quotation omitted); *see also IpVenture, Inc. v. Cellco P'ship*, No. C 10-04755 JSW, 2011 WL 207978, at *3 (N.D. Cal. Jan. 21, 2011) ("In order to state a claim for willful infringement, Plaintiff must make out the barest factual assertion of knowledge of an issued patent."). "The complaint must demonstrate a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement were either known or were so obvious that they should have been known." *MONEC*, 897 F. Supp. 2d at 236 (quotation omitted).

Honeywell's Proposed Second Amended Complaint does not contain any factual allegations in which Honeywell's patents were called to the attention of ICM. Although Honeywell's memorandum in support of its motion to amend includes several factual bases which might arguably support a claim for willful infringement, none of these were pleaded in the Proposed Second Amended Complaint—not even in truncated form. *See MasterMine Software, Inc. v. Microsoft Corp.*, No. 13-cv-0971 (PJS/TNL), at 2-3 (D. Minn. Oct. 8, 2013) (order dismissing indirect-infringement claim without prejudice and declining to address allegations set forth in plaintiff's brief that plaintiff "*could* make in

an amended complaint and that, it contends, would cure any deficiencies in its original complaint").

The Proposed Second Amended Complaint includes allegations addressing the patents' issuance; Honeywell's ownership of the patents; Honeywell's rights under the patents; and ICM's manufacture, use, sale, and/or distribution of products allegedly infringing the patents. (*See* Decl. of Matthew L. Woods, Ex. A ¶¶ 17-32, 114-140 ("Proposed Second Amended Complaint"). But then, without further factual development, Honeywell summarily states with respect to each patent at issue: "Based upon the discovery record to date, ICM has either been aware of, or should have been aware of this patent, and ICM was recklessly indifferent to Honeywell's intellectual property rights. ICM's infringement has been and continues to be willful." (*Id.* at ¶¶ 119, 126, 133, 139; *see also id.* at ¶¶ 20, 24, 28, 32.) Such conclusory statements do not provide a reasonable inference that ICM was aware of Honeywell's patents. *See Fuzzysharp Techs. Inc. v. NVIDIA Corp.*, No. 12-CV-06375-JST, 2013 WL 2249707, at *2 (N.D. Cal. Apr. 18, 2013) (allegations failed to raise reasonable inference defendant was aware of plaintiff's patent); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *4 (N.D. Cal. Mar. 22, 2012) (dismissing willful-infringement claim in which "Plaintiff merely makes conclusory allegations that Defendants knowingly disregarded Plaintiff's patent rights").

Nor do the allegations contained in Honeywell's Proposed Second Amended Complaint show that ICM was otherwise on notice of or had reason to know of Honeywell's patents. *See MONECO*, 897 F. Supp.2d at 236 (dismissing willful-

infringement claim where plaintiff failed to plead defendant "had any reason to know of the reexamined . . . patent"); *cf. Medtrica*, 2012 WL 5726799, at *1 (defendant's notice of patent and continued sale of affected products "sufficient to 'make out the barest factual assertion'" for willful-infringement claim); *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, No. 10-425-LPS, 2012 WL 1134318, at *3 (D. Del. Mar. 28, 2012) (detailing factual circumstances in which patents-in-suit were called to attention of defendant's personnel and representatives).

Because the willful-infringement allegations in Honeywell's Proposed Second Amended Complaint do not provide this Court with sufficient facts to infer that ICM acted despite an objectively high likelihood that its actions constituted infringement of valid patents, Honeywell's willful-infringement claims are futile and Honeywell's motion for leave to amend is denied.[2]

## IV.

Finally, ICM moves for a protective order preventing Honeywell from conducting a 30(b)(6) deposition concerning ICM's insurance coverage. (ICM's Mem. in Supp. of Protective Order at 1, Docket No. 167.) ICM asserts that the testimony sought is "directed to subject matter that is both irrelevant to any claims or defenses of this lawsuit and privileged." (*Id.*)

---

[2] Because this Court concludes that Honeywell's willful-infringement allegations fail to state a claim under Fed. R. Civ. P. 12(b)(6) and are therefore futile, the Court will not address ICM's additional arguments, including that (1) the willful-infringement claims could not survive a motion for summary judgment; (2) Honeywell was required to move for a preliminary injunction before seeking leave to amend; (3) Honeywell's motion was brought in bad faith; and (4) ICM would be prejudiced.

Although this action commenced back in 2011, ICM just recently became aware of insurance coverage "that might, in whole or in part, indemnify a judgment relating to Honeywell's claims." (*Id.* at 2; *see also* Decl. of Heather J. Kliebenstein ("Kliebenstein Decl."), Ex. B, Docket No. 168-1.) ICM subsequently amended its initial disclosures and provided the applicable policies to Honeywell.

Honeywell seeks testimony on the following three topics:

> 1. All communications between ICM and its lawyers, agents or representatives on the one hand, and The Hartford and/or its lawyers, agents or representatives on the other, regarding the insurance policies reflected in ICM0043797-ICM0046128 as those communications pertain to possible indemnification, in whole or in part, of ICM by The Hartford for the costs of this action including defense, settlement and potential judgment.
>
> 2. All documents constituting, referring to or referenced by the communications referred to in [the topic above].
>
> 3. The circumstances under which ICM became aware of insurance agreements that may or will indemnify it for part of a possible judgment, as referenced in ICM's Fifth Amended Rule 26(a)(1) Initial Disclosures, including but limited to when and how ICM first informed any insurance company about Honeywell's allegations in this action, that insurance company's response, all subsequent communication related to ICM's awareness and the reasons for ICM's statement in its initial 26(a) disclosures that it was aware of no such coverage.

(Kliebenstein Decl., Ex. A.)

## A. Standard of Review

Rule 26(c) permits the Court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of

good cause. Fed. R. Civ. P. 26(c)(1). Among other things, the Court may foreclose entirely the discovery sought or narrow the scope of such discovery. Fed. R. Civ. P. 26(c)(1)(A), (D). "[Rule] 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. The requirement that good cause be shown, however, still must be met by the party seeking the protective order." *May Coating Techs., Inc. v. Ill. Tool Works*, No. Civ-4-93-953, 157 F.R.D. 55, 57 (D. Minn. 1994) (citation omitted).

### B. Analysis

The Court begins with the most basic inquiry: whether the information sought by Honeywell is relevant under Rule 26(b)(1). The Federal Rules of Civil Procedure allow a party "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly at the discovery stage." *Heilman v. Waldron*, No. 11-cv-1930 (JRT/SER), 287 F.R.D. 467, 473 (D. Minn. 2012); *see also Mead Corp. v. Riverwood Natural Res. Corp.*, Civ. No. 5-91-21, 145 F.R.D. 512, 522 (D. Minn. 1992) (noting "[r]elevancy, in the discovery context, is extremely broad"). "Information sought in discovery need not be admissible at trial, so long as it appears reasonably calculated to lead to the discovery of admissible evidence." *Heilman*, 287 F.R.D. at 473.

Some threshold showing is necessary, however, "before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *see Bredemus v. Int'l Paper Co.*, No. 06-cv-1274

22

(PJS/RLE), 252 F.R.D. 529, 532 (D. Minn. 2008) (stating "relevancy under Rule 26 is not without bounds"). This Court "has considerable discretion in granting or denying discovery requests." *Id.* at 534.

As part of its initial disclosures under Rule 26(a)(1), a party is required to produce for inspection and copying "any insurance agreement under which an insur[er] . . . may be liable to satisfy all or part of possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). ICM contends that this rule requires nothing more than "the disclosure of the applicable insurance policies." (ICM's Mem. in Supp. of Mot. for Protective Order at 6.) With respect to a party's *initial-disclosure obligations*, ICM is correct. *See, e.g.*, *Excelsior College v. Frye*, 233 F.R.D. 583, 586 (S.D. Cal. 2006) (rule "merely requires the disclosure of an insurance policy or other agreement that gives rise to an insurer's obligation to indemnify or hold its insured harmless for a judgment, and does not require the production of all agreements relating to insurance" (applying former Rule 26(a)(1)(D)).

The Court agrees with Honeywell, however, that Rule 26(a)(1)(A)(iv) is not the ceiling for insurance-related discovery. *See Frye*, 233 F.R.D. at 585 n.1 (noting party only sought to compel insurance information based on initial-disclosure obligations and "there may be other procedural mechanisms for obtaining information or documentation from a party regarding its insurance," citing Fed. R. Civ. P. 30, 31, 33, and 34). Nonetheless, the discovery sought must still be relevant to a claim or defense. Fed. R. Civ. P. 26(b)(1).

Honeywell asserts that

> [c]ertain relevant and responsive documents and information (in addition to the policy) must exist here, as is standard practice in the insurance industry. This would include the application, underwriting, and review process. It would also include ongoing compliance. And it would include the eventual claims and adjustment process.

(Honeywell's Mem. in Opp'n to Mot. for Protective Order at 18-19, Docket No. 176.) In essence, Honeywell seeks the production of claims file information maintained by ICM's insurer. But, this is not an insurance-coverage dispute—where the insurance application, underwriting, review, and claims and adjustments processes are reasonably calculated to the lead to the discovery of admissible evidence concerning a party's claim or defense. *See, e.g.*, *Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 517, 521 (D. Nev. 2013) (claims file and underwriting files were relevant to plaintiff's breach-of-contract and bad-faith claims against insurer); *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 319 (D. S.D. 2009) (claims file, notes, memos, and documents concerning plaintiff's disability claim relevant to whether insurer acted in bad faith in denying claim). These documents, and discussions about them, have little, if any, bearing on Honeywell's patent, trade-dress, copyright, and false-advertising claims. Similarly, while the Court certainly understands Honeywell's frustration with the timing of this development, how ICM became aware of potential insurance coverage with respect to this action does not bear on Honeywell's asserted claims either. Where the requested insurance-related discovery is "not relevant or reasonably calculated

to lead to the discovery of admissible evidence," a party need only produce what is required under Fed. R. Civ. P. 26(a)(1)(A)(iv). *Gulf Ins. Co. v. Skyline Displays Inc.*, No. 02-cv-3503 (DSD/SRN), at 9-10 (D. Minn. Oct. 20, 2003) (order denying interrogatories and document request relating to reinsurance agreement under former Rule 26(a)(1)(D)); *cf. Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 160-61 (N.D. Ia. 1994) (noting historical significance of rule providing for insurance-related discovery "because [insurance information] was not generally considered relevant or discoverable within the scope of Rule 26(b)(1)").

Moreover, the underlying information Honeywell hopes to obtain through discovery of communications between ICM and its insurer can be more conveniently obtained from ICM itself. Honeywell asserts that ICM's communications with its insurer

> are necessarily likely to bear on this case, including documents and information relating to ICM's infringement of Honeywell's intellectual property and whether it was willful and intentional, the measure and amount of potential damages, and other factual information such as instances of confusion in the market and bases for confirming or denying instances thereof.
>
> [T]he underwriting process may provide nonprivileged information relating to the underlying facts of Honeywell's claims, such as ICM's policies, procedures, and practices to avoid potential claims for intellectual property infringement or false advertising (i.e., review of patent clearance practices and standards for review of accuracy of marketing materials). ICM may have also had to explain how it avoiding infringement during its product development cycle.

(Honeywell's Mem. in Opp'n to Mot. for Protective Order at 14-15.) This information is more efficiently obtained from ICM and, indeed, Honeywell has pursued these topics through other discovery means. Deposition transcripts filed in connection Honeywell's

motion for leave to amend to add a claim for willful infringement show that Honeywell has deposed several individuals concerning ICM's design process and patent screening efforts. The Court has also previously granted Honeywell's discovery request for evidence of confusion and granted in part discovery concerning its false-advertising claims. Rule 26 directs the court to "limit the frequency or extent of discovery" when "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Accordingly, because (1) ICM has provided the insurance policy documents themselves; (2) Honeywell's noticed deposition topics are not reasonably calculated to the lead to the discovery of admissible evidence regarding Honeywell's claims against ICM; and (3) Honeywell has already explored and obtained information concerning those matters Honeywell contends *may* be addressed in the files and documents maintained by and communications with ICM's insurer, ICM's motion for a protective order is granted. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C), (c)(1); *Hofer*, 981 F.2d at 380; *see also Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1089 (D. Minn. 1973) (noting "practical considerations dictate that the parties should not be permitted to roam in the shadow zones of relevancy to explore matter which does not presently appear germane o[n] the theory that it might conceivably become so" (quotation omitted)).

## V.

Based on all the files, records, and proceedings herein and for the reasons stated above,

**IT IS HEREBY ORDERED** that:

1. Honeywell's Motion to Amend Response to ICM's Request for Admissions Nos. 16, 17 & 40 (Docket No. 142) is **DENIED** as set forth herein.

2. Honeywell's Motion to Amend its Complaint (Docket No. 161) is **DENIED**.

3. ICM's Motion for a Protective Order Relating to Honeywell International Inc.'s Rule 30(b)(6) Deposition Notice of ICM Controls Corp. (Docket No. 159) is **GRANTED**.

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: November_____22_____, 2013          _____*s/ Tony N. Leung*_____
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          for the District of Minnesota

                                          *Honeywell International Inc. v. ICM Controls Corp.*
                                          File No. 11-cv-569 (JNE/TNL)