UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HONEYWELL INTERNATIONAL
INC.,

      Plaintiff,

v.

ICM CONTROLS CORP.,

      Defendant.

Case No. 11-cv-569 (JNE/TNL)
ORDER

      Before the Court are dueling *Daubert* motions in this intellectual property case involving devices used with heating, ventilating, and air conditioning ("HVAC") systems. Defendant ICM Controls Corp. ("ICM") moves to exclude certain testimony of one of Plaintiff Honeywell International Inc.'s ("Honeywell") expert witnesses, Richard Pothier [Dkt. No. 427]. Honeywell moves to exclude certain testimony of an ICM expert witness, Adam Vaczek [Dkt No. 420].

      These are not the first *Daubert* motions to be considered in this case. On August 27, 2014, the Court ruled on five earlier *Daubert* motions, including another Honeywell motion to exclude testimony by Vaczek, which the Court granted in part and denied in part. *See* Dkt. No. 338 ("August 2014 Order"). The Court also ruled on ICM's motions for partial summary judgment, finding one of Honeywell's patents to be invalid and granting the motions as to Honeywell's false advertising and trade dress infringement claims. *See id.* at 2, 17 n. 9, 26, 42; *see also* Dkt. No. 359, at 5. After the Court decided those motions, one of Honeywell's experts, David Schumacher, unfortunately passed away. *See* Dkt. No. 360. The Court allowed Honeywell to substitute Pothier as an expert witness in Schumacher's stead. *See* Dkt. Nos. 398, 408. In allowing the substitution, the magistrate judge rejected ICM's assertions that Pothier introduced new subject matter and relied on documents that Schumacher had not relied on. The

Court affirmed the magistrate judge's order.[1] Dkt. No. 408. After the parties exchanged expert reports—Honeywell offering Pothier's replacement report, ICM responding with a rebuttal report by Vaczek, and Pothier replying—and had an opportunity to conduct discovery relating to these reports, the parties filed the *Daubert* motions now under consideration.

## DISCUSSION

The standard for the admission of expert testimony is well established. This opinion builds on the Court's citation and application of the relevant law in its August 2014 Order. To reiterate, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] The magistrate judge declined to rule on ICM's argument that some of Pothier's proposed testimony was irrelevant given what ICM contended was the scope of the remaining claims. The magistrate judge explicitly chose not to comment on whether Honeywell's claim under the Minnesota Deceptive Trade Practices Act (Count XIX) remains alive; nor did the Court opine on the question. *See* Dkt. No. 398, at 11; Dkt. No. 408, at 2. The Court granted summary judgment against Honeywell on its Lanham Act trade dress infringement, false advertising, and false designation of origin claims (Counts XIII through XVIII). Aug. 27, 2014 Order at 26, 42; Dkt. No. 359, at 5. The Court notes that in ICM's motion for summary judgment on Honeywell's false designation of origin claims, Dkt. No. 243, it briefly argued that summary judgment should be granted on Count XIX in addition to Count XVIII.

Whether Count XIX, which relies on the same factual allegations as those claims by incorporating them by reference, *see* Am. Compl. ¶¶ 199-200, Dkt. No. 32, remains viable is a question that has not been reached and was not raised for the Court's consideration in these *Daubert* motions. ICM may file a motion with supporting papers addressing this question within three weeks of the date of this order. Honeywell's response, if any, will be due two weeks later. No reply will be permitted. Each party's memorandum is limited to 4,500 words.

Fed. R. Evid. 702. Under the United States Supreme Court's interpretation of Rule 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, "[t]here is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005).

The Court will address first the challenges to Pothier's proffered testimony and then the challenges to Vaczek's proffered rebuttal testimony.

**A. ICM's Motion to Exclude Pothier's Testimony**

ICM does not seek to exclude Pothier's testimony entirely and does not challenge his qualifications generally. Rather, ICM targets Pothier's testimony related to Honeywell's copyright infringement claims in this case (Counts V through XII), focusing on three topics: originality of the allegedly infringed materials, substantial similarity between the alleged infringed and infringing materials, and a causal nexus with regard to damages.

Honeywell's copyright claims allege that the labels and product manuals that ICM has included with the sale of certain HVAC-related products infringe Honeywell's copyrights in its own labels and manuals used with its competing products. In its August 2014 Order, the Court set out some of the relevant law in its evaluation of Honeywell's earlier motion to exclude Vaczek's testimony. Because the parties' arguments with regard to the current *Daubert* motions echo many of the same themes, another review of the key copyright law is necessary.

To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991); *see also Rottlund v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (citation omitted). To obtain a valid copyright, a work must "possess the requisite originality." *See Feist*, 499 U.S. at 344, 348. "Original" means

merely that "the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." *Id.* at 345. But obtaining a copyright in a work does not serve as an impregnable shield against all copying, because only original elements are protectable. "The mere fact that a work is copyrighted does not mean that *every element* of the work may be protected." *Id.* at 348 (emphasis added). Thus, "[o]thers may copy the underlying facts" in a copyrighted work, "but not the precise words used to present them." *Id.* Ideas too can be copied. *Id.* at 350; *see also Toro Co. v. R & R Prods. Co.*, 787 F.2d 1208, 1212 (8th Cir. 1986). Because ideas are not copyrightable, the factfinder must "filter out ideas and *scènes à faire*" in determining whether the works are substantially similar. *Frye v. YMCA Camp Kitaki*, 617 F.3d 1005, 1009 n.3 (8th Cir. 2010); *see also Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 121 (8th Cir. 1987) (affirming the conclusion that two works were not substantially similar in expression and "also agree[ing]" that "any remaining apparent similarities are either noncopyrightable ideas, *scènes à faire*, or of an insubstantial nature"). *Scènes à faire* are "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic;" in other words, they are "hackneyed elements," which "cannot furnish the basis for finding substantial similarity." *Frye*, 617 F.3d at 1008 (quoting *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042-43 (8th Cir. 2003)). A related concept is merger. Under the doctrine of merger, "copyright protection will be denied to even some *expressions* of ideas if the idea behind the expression is such that it can be expressed only in a very limited number of ways." *Toro*, 787 F.2d at 1212.

As to the second element of infringement, copying may be established by direct evidence or "by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials

4

and the copyrighted materials." *Rottlund*, 452 F.3d at 731. Analyzing whether substantial similarity exists requires two steps. First, "[s]imilarity of ideas is evaluated extrinsically, focusing on objective similarities in the details of the works." *Id.* Expert opinion is appropriate in this step. *Id.* Second, if the ideas are substantially similar, then "similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Id.* (quoting *Hartman*, 833 F.2d at 120). "Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar." *Hartman*, 833 F.2d at 121; *see also Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 853 (8th Cir. 2004). For this second step, "[e]xpert opinion and analytical dissection are not appropriate to establish or rebut similarity of expression." *Rottlund*, 452 F.3d at 731.

### 1. Originality

ICM first argues that Pothier is unqualified to render opinions on how many ways there are to express certain ideas in the labels and manuals for the HVAC-related products at issue and how a multitude of possible variations proves the originality of Honeywell's works. *See* ICM Br. 8-12, Dkt. No. 430. ICM takes issue with, for example, Pothier's conclusions from a review of product literature of other competitors in the industry that "[t]here are original aspects to the form and content of" Honeywell's labels and manuals. Stradley Decl. Ex. A ¶ 78, Dkt. No. 431. Similarly, ICM objects to Pothier's statement that there are "numerous ways in which to convey information found in technical literature." *Id.* ¶ 84.

ICM aptly points out that the Court faced similar objections by Honeywell to Vaczek's testimony. In his initial report, Vaczek included "statements to the effect that there are 'limited ways' to say something, the words used are 'simple ways to convey the message,' or the

5

language uses the 'most basic words.'" August 2014 Order at 49. The Court noted that Vaczek lacks experience drafting manuals or labels, and concluded:

> While he may have reviewed many such materials, his credentials do not reflect any special expertise in matters of linguistics. Accordingly, while he may share his knowledge about the necessity and typicality of particular content, including whether technical characteristics are generally expressed in a particular manner, he may not opine on whether there are limited forms of expression for the content or whether a particular expression is the most basic or simple one.

*Id.* Like Vaczek, Pothier has extensive experience in the HVAC industry in various roles, but he lacks experience and expertise in *drafting* technical documents and is not a linguistics expert. Therefore, like Vaczek, he will be precluded from offering opinions about whether there are limited or myriad ways of expressing certain facts or ideas, because he is not qualified as an expert on that topic. Fed. R. Evid. 702. He may, like Vaczek, testify about whether technical characteristics are commonly expressed in a particular manner and may review the literature to provide examples.[2]

Second, ICM points to some examples of statements where Pothier appears to recite a legal standard. ICM Br. 11. For instance, he says that "[f]unctionality is irrelevant to the questions of authorship and originality." Stradley Decl. Ex. B ¶ 34, Dkt. No. 431. Similarly, in discussing the materials he considered, Pothier recites what he understands to be the test for copyright infringement. *Id.* Ex. A ¶ 42. The parties are both reminded that "the law is given to the jury by the court and not introduced as evidence." August 2014 Order at 51 (quoting *United States v. Gleason*, 726 F.2d 385, 388 (8th Cir. 1984)). At trial, the experts should be careful not to instruct the jury on the law.

---

[2] Recognizing that expert reports provide notice of the testimony that expert witnesses "will express," Fed. R. Civ. P. 26(a)(2)(B)(i), but do not necessarily match up word-for-word to the witness's in-court testimony, the Court throughout this Order describes the type of testimony allowed or to be excluded but does not cite every instance of similar statements made in a report.

Third, ICM argues that Pothier's analysis and conclusions about the originality of Honeywell's labels and manuals should be excluded because they bear on the ultimate issue of originality. ICM Br. 11. Expert opinion "embracing an ultimate issue is permissible under Federal Rules of Evidence 704(a) . . . ." *Rottlund*, 452 F.3d at 732. But the Court must still "guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Id.* (citation omitted). As stated above, for copyright purposes, originality has two aspects: independent creation and possessing some minimal degree of creativity. *Feist*, 499 U.S. at 345. Pothier may testify on the second of these aspects.[3] He may, for instance, testify about whether his knowledge and experience with the HVAC industry, including his familiarity with other competitors' manuals and labels, leads him to conclude that the works at issue have creative elements. In this sense, his testimony is the counterpoint to Vaczek's testimony that elements of Honeywell's works are not protectable under, for example, the merger or *scènes à faire* doctrines or to the extent that only facts or ideas are similar. The Court has already ruled that such testimony by Vaczek, which can be found in Section A of Vaczek's initial expert report (Dkt. No. 276-1), is admissible. *See* August 2014 Order at 48-49. Thus, for example, if Vaczek testifies that a certain phrase is, to his knowledge, universally used in HVAC manuals or labels, Pothier would be allowed to testify that he has seen different variations in other competitors' literature.

---

[3] No one asserts that Pothier can opine on whether Honeywell created its works independently, so the Court need not decide, as in *Rottlund*, whether Pothier has any firsthand knowledge on the topic. *See* 452 F.3d at 732. Because "original" has two meanings in this legal context, and Pothier only appears qualified to opine with regard to one of them, he should be careful with his use of that term.

### 2. Similarity of Expression

Next, ICM seeks to exclude Pothier's testimony comparing Honeywell's labels and manuals to ICM's. ICM Br. 12-14. For example, Pothier states that "ICM's accused manuals and labels contain large portions of material generated by Honeywell verbatim," and that having "performed a side-by-side comparison of the Honeywell manuals and labels and the corresponding ICM manuals and labels," his "observations confirm the amount of verbatim reproduction/similarity." Stradley Decl. Ex. A ¶¶ 81-82. This type of analysis and conclusion about the similarity of expression between the works is clearly inappropriate under Eighth Circuit law. *See Rottlund*, 452 F.3d at 731; *Hartman*, 833 F.2d at 120. Whether there is substantial similarity of expression is for the jury to decide from the viewpoint of the ordinary, reasonable person. *Rottlund*, 452 F.3d at 731. Just as Vaczek's proposed testimony contrasting various expressive aspects of the works was excluded, August 2014 Order at 47-48, so too Pothier's testimony about similarity of expression (including references to what he deems to be "verbatim" similarity) will be excluded.

### 3. Damages Nexus

Finally, ICM asserts that Pothier offers opinions related to copyright damages that apply the wrong legal standard and therefore are unhelpful and irrelevant. ICM Br. 14-26. ICM objects to testimony about the importance, or even necessity, of including labels and manuals with the HVAC-related products at issue. For example, Pothier concludes that "[w]ithout the affixed labels and accompanying literature, there would be no product – it could not be sold at all." Stradley Decl. Ex. A ¶ 95. ICM also objects to testimony about how Honeywell uses labels and manuals to make its products more attractive to the contractors who purchase them. *See, e.g.*, *id.* ¶¶ 98-99, 110-11; *see generally id.* ¶¶ 85-114.

The parties dispute the relevant standard for causation in copyright damages. Assuming that Honeywell establishes copyright infringement, it will be entitled to recover its damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (2010). The statute further provides: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* The parties' dispute hinges on the "attributable to" requirement. If the infringement is less than a wholesale copying of the entirety of a work, as alleged here, must a plaintiff prove that the defendant profited from the infringing work, or must the plaintiff prove more specifically that the defendant profited from the infringing portions of the work? The Eighth Circuit addressed this question in *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 796 (8th Cir. 2003), a case that each party contends supports its respective position.

In *Andreas*, a jury found that Audi had infringed the plaintiff's copyright in a drawing with text by airing a television commercial for its TT coupe that included similar verbiage and was substantially similar to the plaintiff's work. *Id.* at 791-92. Audi did not contest the infringement finding but objected to the jury's award of Audi's profits from sales of the TT. *Id.* at 792. The parties debated what causal connection was required and who carried the burden of proof, particularly where the defendant's profits were not directly made from the sale of the infringing work (the commercial), but rather flowed indirectly from the infringement because the infringing work promoted the sales of another product (the TT).[4] The appellate court, looking to

---

[4] An example of direct profits would be the profits from selling an infringing t-shirt featuring a print of a copyrighted drawing. There, the infringing work, the t-shirt, is itself the product being sold, unlike an infringing television commercial.

9

the statute itself, ruled that "[t]he plaintiff has the 'burden' to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur." *Id.* at 796 (quoting *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002)). It quickly clarified that the plaintiff's burden and the nexus requirement were the same "in both direct and indirect profits cases." *Id.* The appellate court continued:

> Once that nexus is established in either a direct or indirect profits case, if "an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits is proper. The burden of proving apportionment (*i.e.*, the contribution to profits of elements other than the infringed property), is the defendant's."

*Id.* (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985)). The court's application of this rule to the facts of *Andreas* enlightens the parties' dispute in this case. The appellate court held that the *Andreas* plaintiff had met its initial burden by offering evidence that the infringing work, the commercial, "contributed to sales of" the TT coupe, the product promoted in the commercial. *Id.* at 796-97. Evidence that the work "contributed to" the profits of the TT was sufficient to "shift[] the burden to Audi of showing what effect other factors had on its profits." *Id.* at 797. In reaching this conclusion, the Eighth Circuit Court of Appeals cited *Frank Music*, in which the Ninth Circuit Court of Appeals held that a plaintiff had "provided sufficient evidence that the infringing use of six minutes['] worth of music" in a musical revue intended to draw people to the MGM casino "contributed to MGM's gaming profits, making an award proper if ascertainable," where the plaintiff offered evidence that "the spectacularly successful production revue" enhanced MGM's gaming operations. *Id.* (citing 772 F.2d at 517).

The *Andreas* discussion makes clear that, assuming infringement is established, for an award of § 504(b) profits, Honeywell must first prove a nexus between the infringing *work* (an ICM label or manual) and ICM's profits from the product affiliated with that label or manual

(*e.g.*, ICM's 1511 interrupted electronic oil primary device).  Put another way, Honeywell must show that the label or manual—like the Audi commercial or the musical revue—"contributed to" the profits from the affiliated product—like the TT coupe or MGM casino games.  *See id.*  ICM's contention that Honeywell must show that specific infringing parts of a label or manual contributed to profits from the affiliated ICM product is belied by the *Andreas* Court's analysis.  The court did not require the plaintiff to show a nexus between the commercial's objectionable verbiage and the TT sales.  Rather, reflecting the burden-shifting set out in the statute, once the court found an adequate connection between the commercial and the TT profits based on the plaintiff's evidence, it then assigned to Audi the job of proving that factors other than the infringing verbiage caused its sales: "Audi then bore the burden of establishing that its profit was attributable to factors other than the infringing words: the other two commercials that did not contain the infringed words, *other parts of the [infringing] commercial*, customer loyalty, brand recognition, etc." *Id.* (emphasis added).  If Honeywell can make its required showing that a label or manual contributed to sales of the product it accompanied, ICM would then be free to offer evidence that profits from the sales of that product actually derived from other causes.

  ICM points to the *Andreas* Court's assessment of the strength of the evidence connecting the infringement to the profits from the TT coupe sales.  *See id.* at 795, 796-97.  The appellate court found that "[t]he infringement was the centerpiece of a commercial that essentially showed nothing but the TT coupe;" "Audi enthusiastically presented *the commercial* to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market;" the TT's sales "during the period that *the commercial* aired were above Audi's projections;" the "three *commercials* received high ratings" for "consumer recall;" and Audi paid the advertising agency that created the commercials a "substantial bonus based on the success of *the commercials*." *Id.*

11

at 796-97 (emphases added). ICM homes in on the use of the phrase "[t]he infringement was the centerpiece of a commercial" to argue that the required nexus is between infringing portions of the defendant's work and defendant's profits, but the rest of the *Andreas* Court's analysis contradicts ICM's focus. The rest of the passage, as the italicized portions show, reveals that the appellate court was testing the connection between the commercial and the TT profits, not more finely parsing whether there was a connection between the infringing verbiage in the commercial and those profits. The court's conclusion reinforces this broader interpretation of the nexus requirement: "[The plaintiff] introduced more than mere speculation that *the [infringing] commercial* contributed to sales of the TT coupe." *Id.* at 796 (emphasis added).[5]

ICM relies primarily on Ninth Circuit cases to support its narrower interpretation of the nexus. It is true that some statements in decisions in that circuit can arguably be read as requiring the plaintiff to prove a nexus between the infringing portions of a defendant's work and the profits. *See Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002) (finding insufficient evidence "to support a causal relationship between the infringement and the profits generated

---

[5] As this passage suggests, even though the nexus is required in both direct and indirect cases, courts appear particularly sensitive in indirect cases to testing the link between the infringement and the profits of an affiliated item or product line. In other words, they guard against a plaintiff's claiming the defendant's profits from something only feebly connected to the infringement. For example, in *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), an indirect profits case that ICM cites, the Ninth Circuit Court of Appeals found the nexus proof inadequate where the plaintiff sought profits from retail purchases of Timex watches based on a "brand premium" theory. The infringing work in *Polar Bear* was displayed primarily at trade shows, and there was no evidence that any retail customers would have seen those displays; thus, the idea that the infringement contributed to consumer purchases was speculative. *Id.* at 715. In another case involving an advertisement for Gap stores that included an unauthorized depiction of the plaintiff's copyrighted eyewear, the plaintiff failed to show a nexus between the advertisement and the profits it sought from the entire corporate parent of the Gap, including profits for other brands "that were in no way promoted by the advertisement." *Davis v. The Gap, Inc.*, 246 F.3d 152, 161 (2d Cir. 2001). The *Andreas* Court's analysis, discussed above, reflects its testing of this connection between the infringement and the profits, not testing for a connection between the specific infringing portion of the defendant's work and its profits.

indirectly from such an infringement" where the infringing "artwork was but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself"); *Thale v. Apple Inc.*, No. C-11-03778-YGR, 2013 WL 3245170, at *8 (N.D. Cal. June 26, 2013) ("[T]he Photo here was integrated into no more than five seconds of a 30-second commercial where numerous images and various product functions were displayed. There is no evidence showing that sales resulted from the mere use of the Photo."). If that is the rule in the Ninth Circuit, it is not controlling here. The Eighth Circuit Court of Appeals' interpretation of the statute, which incorporated analysis of *Mackie* and earlier Ninth Circuit precedent in *Frank Music*, is clear and controlling: Once the plaintiff proves a causal nexus between the infringing work and gross revenues from a related product, *see Andreas*, 336 F.3d at 796, the burden shifts to the defendant to prove that "its profit was attributable to factors other than the infringing [portion of the work]," including "other parts" of the work, *id.* at 797. After all, an award of the infringing defendant's profits is intended "to prevent the infringer from unfairly benefiting from a wrongful act," so it is fair to assign to the infringer the burden of reducing a gross revenue figure to its actual profits. *See Andreas*, 336 F.3d at 795 (quoting § 504 legislative history).

If ICM's interpretation of § 504(b) is unpersuasive, so too is its argument that Pothier's testimony relating to Honeywell's copyright damages must be excluded as based on an incorrect standard. ICM objects to Pothier's opinions that product manuals and labels are necessary and helpful to the sale of the HVAC-related products at issue. ICM first argues that this evidence is irrelevant because it fails to show that allegedly infringing *portions* of ICM's manuals and labels affected sales of those products. ICM Br. 17-18. As explained above, Honeywell is not required to prove such a narrow causal nexus. Moreover, ICM's own expert, Vaczek, is prepared to testify that the inclusion of manuals is critical to the sales of the related products, *see* Vaczek

13

Rebuttal Report at 11, Dkt. No. 426, so it is hard to understand why Pothier's testimony about this seemingly uncontroversial point must be excluded as unreliable or unhelpful.

Second, ICM argues that Pothier's opinions are improper in focusing on how *Honeywell's* manuals and labels affect *Honeywell's* product sales. ICM Br. 19-22. Pothier, who is a sales representative for an HVAC product distributor representing product lines for brands that include Honeywell, represents that he works with contractors (the ultimate purchasers of products like those at issue) and is familiar with how they make their purchasing decisions. He also trains other distributors' sales staff to "be familiar with" products in the lines that he represents, presumably teaching them selling points based on his understanding of what drives contractors' purchasing decisions. Pothier's opinions about how manuals and labels affect product sales in the HVAC market, using Honeywell's approach and institutional knowledge as an example, appear relevant to informing the jury about how ICM's allegedly infringing manuals and labels affected sales of its products. The opinions also appear "sufficiently grounded to be helpful to the jury," because they are based on Pothier's experiences with contractors and distributors in this specialized industry. *See Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1012 (8th Cir. 2005). Excluding Pothier's opinions on this topic is not merited. Their probative value, though, remains to be seen. ICM, which has a different view of the market and contractors' purchasing decisions, might or might not persuade the jury of its contrasting view through "[v]igorous cross-examination" and "presentation of contrary evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

Third, ICM contends that Pothier has conceded that manuals and labels do not influence sales of products like those at issue and that he has no basis to opine that there is a nexus between the alleged infringement and ICM's profits from the related products. ICM Br. 22-24.

14

ICM highlights statements in Pothier's deposition testimony to the effect that contractors select products based on their functions and not "based on a manual itself." He states elsewhere, however, that the product could not and would not be sold if a manual and a label were not included, and suggests that contractors may, all else being equal, prefer brands that they know include high quality product literature with their products. Pothier's opinions on the causal nexus for copyright damages appear to have an adequate basis to be of some assistance to the jury, so the Court will not exclude them. *See Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007). The jury is capable of evaluating the strength of the testimony and Pothier's basis for his opinions. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Id.* (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)).

### B. Honeywell's Motion to Exclude Vaczek's Rebuttal Testimony

Honeywell moves to preclude Vaczek from offering the opinions expressed in Section 6 of his rebuttal to Pothier's substitute report: "Response to Pothier's Opinions Regarding 'Originality of the Manuals and Labels at Issue.'" Honeywell Br. 9, Dkt. No. 423; Honeywell Reply Br. 3, Dkt. No. 445. As its title makes clear, as do its various references to "disagreeing" with Pothier's statements, Vaczek's Section 6 responds to the section of Pothier's report about the originality of Honeywell's labels and manuals. The Court's rulings on the admissibility of Pothier's opinions on originality, *see* Section A.1, *supra*, apply equally to Vaczek's responses. Thus, Vaczek may not opine about whether there are limited or myriad ways of expressing certain facts or ideas, but he may offer some testimony that goes to originality—for example, that certain elements of Honeywell's works are commonly used in the industry's product

literature with which he is familiar. This guidance applies to any such opinions, whether they are noticed in Section 6 or other areas of the rebuttal report.

In its reply brief, Honeywell also asks the Court to admonish Vaczek about his use of the phrases like "generic," "common industry terms," and "functional" to describe expressions in Honeywell's labels and manuals, asserting that his use of these words could confuse the jury about the standard for copyright originality. Honeywell Reply Br. 10-11; *see also* Honeywell Br. 2. The Court does not view phrases like "generic" or "common industry term" as objectionable; they appear relevant to ICM's *scènes à faire* and merger arguments. The use of the phrase "functional" merits more discussion. With regard to copyright protection, that a given work is fact-based or functional does not necessarily preclude protection in its expression or its original selection or arrangement of facts. *See Feist*, 499 U.S. at 349; 4-13 *Nimmer on Copyright* § 13.03[B][2][b] (2016) ("Frequently, particularly in functional and nonfiction works, a plaintiff's work consists of some original material and some uncopyrightable material."). To the extent that Vaczek uses the term "functional" in connection with his opinions on originality, depending on the context, it could be confusing, but the Court can effectively address any potential confusion at trial through jury instructions. *See* August 2014 Order at 49 (ruling similarly with regard to Honeywell's objections to Vaczek's use of the phrase "unique"). As for the use of the term in other contexts, like the examples that Honeywell cites in Vazcek's rebuttal report sections concerning the damages nexus, the Court is confident that the jury will be able to follow the context clues and will not be confused into thinking that he is opining on originality. Again, jury instructions can clarify any potential confusion that may come up at trial.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant ICM Controls Corp.'s Motion to Exclude Testimony of Mr. Pothier [Dkt. No. 427] is GRANTED IN PART AND DENIED IN PART.  Pothier's testimony will be limited as stated in the body of the opinion above.

2. Plaintiff Honeywell International Inc.'s Motion to Exclude Expert Testimony of Adam Vaczek [Dkt. No. 420] is GRANTED IN PART AND DENIED IN PART. Vaczek's testimony will be limited as stated in the body of the opinion above.

Dated: January 26, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge